Gerald Barrett, Esq. SBN: 005855
WARD, KEENAN & BARRETT, P.C.
2141 E. Camelback Rd., Suite 100
Phoenix, AZ 85016
Tel: 602-279-1717
Fax: 602-279-8908
Email: gbarrett@wardkeenanbarrett.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JACK B. KEENAN, M.D., an individual, | |
| Plaintiff, | CIVIL ACTION NO. _____ |
| v. | |
| MARICOPA COUNTY SPECIAL HEALTH CARE DISTRICT, d.b.a. MARICOPA INTEGRATED HEALTH SYSTEM, a political subdivision of the State; ELIZABETH M.N. FERGUSON, M.D., an individual; and TAMMY R. KOPELMAN, M.D., an individual, | **COMPLAINT** **Jury Trial Demanded** |
| Defendants. | |

Plaintiff Jack B. Keenan, M.D. alleges as follows:

**I.      INTRODUCTION**

1.      Plaintiff Jack B. Keenan, M.D. ("Dr. Keenan") was employed as a medical resident by Defendant Maricopa County Special Health Care District, d.b.a Maricopa Integrated Health System ("MIHS") in its General Surgery Training Program.

2.      Starting in November 2016, employees and agents of Defendant MIHS, including Defendant Elizabeth M.N. Ferguson, M.D. ("Dr. Ferguson") and Defendant

Tammy R. Kopelman, M.D. ("Dr. Kopelman") repeatedly and without justification falsely alleged that Plaintiff Jack B. Keenan, M.D. failed to follow properly care for patients, violated Defendant MIHS policy and was dishonest.  As Plaintiff Dr. Keenan responded to and contested these false allegations, Defendant Dr. Ferguson and Defendant Dr. Kopelman engaged in retaliatory conduct, including making additional false allegations and causing Plaintiff to be placed on probation, all of which resulted in Defendant MIHS' Appeals Committee sustaining the decision to place Plaintiff Dr. Keenan on probation for poor performance on May 25, 2017.

3.      On May 25, 2017, Plaintiff Dr. Keenan met with Defendant MIHS' Appeal Committee Chair and Director of Academic Affairs and advised announced that in response to the ongoing retaliation he previously had made audio recordings of conversations between Defendants' agents, including Defendant Dr. Ferguson, and himself concerning his performance that demonstrated allegations relied upon by Defendant Appeals Committee probation were false.

4.      On May 30, 2017, Defendant MIHS advised Plaintiff Dr. Keenan that it was beginning the process of terminating his contract of employment.  Defendant MIHS offered two reasons for the termination.

5.      First, Defendant MIHS asserted in its May 30, 2017 letter that Plaintiff Dr. Keenan violated MIHS Policy 69752-S which the letter describes as prohibiting use of recording devices "while on MIHS's *premises*."  In fact, the referenced rule prohibits "use of . . . audio recorders in the *workplace*."   The distinction between "premises" and "workplace" is not merely semantical. "Workplace" implies the Rule is limited to situations where a physician is providing patient care.  In this regard, MIHS Policy 69752-S states the prohibition applies "when such activity undermines privacy, affects quality of patient care, or interferes with the efficient operation of MIHS facilities." Ignoring the clear purpose and limits of MIHS Policy 69752-S, Defendant MIHS concluded "Having recorded conversations with attendings regarding you (sic) performance puts you in breach

of your contract."  Defendant MIHS neither in the May 30 letter or subsequently has offered any explanation suggesting Plaintiff Dr. Keenan when making the audio recordings did so when treating a patient of otherwise "undermine[d] privacy, affect[ed] quality of patient care, or interfere[d] with the efficient operation of MIHS facilities."

6.      Second, Defendant MIHS' May 30 letter also asserted that Plaintiff Dr. Keenan when making the audio recordings violated MIHS' Ethics Policy requiring its employees to "maintain high standards of honesty and integrity."  Defendant MIHS never explained why recording a conversation to which one is a party constitutes a breach of honesty and integrity standards.  Defendant MIHS' articulated motivation  is belied by the fact that it never asked to review the recordings to determine the accuracy of Plaintiff Dr. Keenan's assertion that his accusers had made false allegations.

7.      By the above described action, Defendant MIHS breached the medical resident contract between it and Plaintiff Dr. Keenan – a contract in which Plaintiff Dr. Keenan possessed a Constitutionally protected property right.

8.      Defendant MIHS's decisions implicate the Constitution's guarantee of Liberty as each decision (a) was based on false accusations; (b) is a matter which Defendant MIHS is required to be publicly reported; and, (c) will have a lasting stigmatizing impact as Plaintiff Dr. Keenan will need to report both employment decisions when applying to another medical residency program and applying for a medical license.

9.      Defendant MIHS denied Plaintiff Dr. Keenan due process both when placing him on probation and then terminating him.  The process that was afforded was deficient in several respects including failing to abide by its own procedures requiring the appointment of impartial decision-makers; failure to allow adequate time to prepare; allowing consideration at hearing of allegations not raised in pre-hearing notices; precluding use of counsel; and, denying the effective ability to cross-examine his accusers.

## II.     SUBJECT MATTER JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Count One (termination) and Count Two (probation) alleging Defendant MIHS denied Plaintiff due process of law. 28 U.S.C. § 1343(a)(3)  and 42 U.S.C. § 1983.

11.     This Court has supplemental subject matter jurisdiction over  Counts Two through Six , which allege pendant state law claims that arise from the same facts and are part of the same case over which this Court has subject matter jurisdiction. 28 U.S.C. §1367(a).

12.     Venue is appropriate as all relevant acts and omissions occurred in Maricopa County, Arizona. 29 U.S.C. § 1391.

## III.     THE PARTIES.

13.     Plaintiff Jack B. Keenan, M.D, ("Dr. Keenan") is a citizen of the United States and resides in Maricopa County, Arizona.

14.     Defendant Maricopa County Special Health Care District, d/b/a Maricopa Integrated Health System ("MIHS") is a special health care district and a political subdivision of the State. See, A.R.S. §§ 48–5501 to –5507.  Pursuant to A.R.S. § 48–5541(2),  Defendant MIHS is a jural entity subject to suit. It maintains its offices and conducts its business in Maricopa County, Arizona.

15.     Defendant Elizabeth M.N. Ferguson, M.D. ("Dr. Ferguson") is employed by Defendant MIHS and resides in Maricopa County, Arizona.

16.     Defendant Tammy R. Kopelman, M.D. ("Dr. Kopelman") is employed by Defendant MIHS and resides in Maricopa County, Arizona.

## IV.     THE FACTS

### A.     The Residency Program

17.     To practice medicine, the holder of a medical degree must obtain a medical license which requires, among other things, completion of a graduate medical residency program.

18.     Defendant MIHS maintains a graduate medical education including a General Surgery Training Program for which admission is competitive based on an applicant's academic background, letters of recommendation and interviews

19.     In May, 2016, Plaintiff Dr. Keenan earned his medical degree from the University of Arizona Medical School.

20.     Through the National Resident Matching Program, Dr. Keenan was placed into Defendant MIHS' General Surgery Training Program.

21.      On June 8, 2016, Dr. Keenan and MIHS entered into a contract entitled "2016-2017 Resident Physician Employment Contract" ("medical resident contract") establishing an employer and contract-employee relationship between MIHS and Dr. Keenan for the period of one-year.

22.     Defendant Dr. Ferguson, at all times relevant, served as Program Director for Defendant MIHS' General Surgery Training Program and the Designated Institutional Officer for Defendant MIHS' residency program.

23.     With respect to Defendant MIHS' residency program, Defendant Dr. Kopelman served as an attending physician in the Trauma Department.  Defendant Dr. Kopelman also facilitated the weekly morbidity and mortality sessions wherein issues of patient outcomes are discussed.

24.     With respect to all matters alleged herein, Defendant Dr. Ferguson and Defendant Dr. Kopelman each were the agent of Defendant MIHS.

**B.     Defendants' Accusations**

25.     Dr. Keenan competently completed all tasks assigned to him while employed by MIHS.

26.     Notwithstanding Dr. Keenan's competent performance, between November 2016 and March 2017, Dr. Kopelman and Dr. Fergusons directly documented, or encouraged senior residents to document a series of false complaints against Dr. Keenan

and used such false accusations to inappropriately and unfairly discipline Plaintiff Dr. Keenan. Examples of which are described in paragraphs 28 through 72 below.

### i.    The Eye Exam

27.    In November, 2016, during a weekly morbidly and mortality meeting attended by all members of the surgical unit, Defendant Dr. Kopelman alleged that Dr. Keenan had not performed an eye exam of a patient who presented in the emergency room complaining of an eye injury.

28.    Plaintiff Dr. Keenan had examined the patient and in so doing administered an eye examination. Plaintiff Dr. Keenan observed no injury to the patient's eye and further denied the patient's request for a narcotics prescription.  After administering the eye examination, Dr. Keenan properly documented the scope of his examination.

29.    The patient presented the next day and was seen by a different physician. Again, the patient requested a narcotics prescription and was denied.

30.    Subsequently, the patient complained to Defendant MIHS that Plaintiff Dr. Keenan had not conducted an eye examination during the initial visit.

31.    In response to Defendant Dr. Kopelman's accusation as described in paragraph 28, Plaintiff Dr. Keenan explained the facts outlined in paragraphs 29 through 31.

32.    In reply to Plaintiff Dr. Keenan's explanation as described in paragraph 32, Defendant Dr. Kopelman stood by her position that Plaintiff Dr. Keenan had not performing the eye exam and made a false entry in the patient's medical record.

### ii.    The Pulseless Patient

33.    Shortly after the above described "eye examination" encounter, Defendant Dr. Kopelman falsely documented in Plaintiff Dr. Keenan's personnel file that he had ignored an emergency department patient who was pulseless in an extremity for a medically significant period of time.

34.    Plaintiff Dr. Keenan was one of several members of the emergency department staff who treated the patient in question.

35.    At the time, Plaintiff Dr. Keenan was serving in the Trauma Rotation under Defendant Dr. Kopelman's supervision.

36.    Medical records, prepared both by Plaintiff Dr. Keenan and other providers refute Dr. Kopelman's accusation described in paragraph 34.

37.    Under the facts posited by Defendant Dr. Kopelman, the patient would have inevitably developed serious complications from such neglect and exhibited symptoms triggering the need for amputation.

38.    The patient in question did not exhibit any symptom consistent with Defendant Dr. Kopelman's accusation against Plaintiff Dr. Keenan.

39.    Despite the ample contradictory medical documentation and the fact that the patient did not exhibit the serious symptoms that would have inevitably occurred if he had been pulseless for the alleged extended time period, Defendant Dr. Kopelman documented her false accusation in Plaintiff Dr. Keenan's personnel file.

40.    At the time of documenting the alleged event, Defendant Dr. Kopelman, notwithstanding being Plaintiff Dr. Keenan's supervising attending, did not advise Plaintiff Dr. Keenan of the allegation or her decision to document his personnel file.

41.    Defendant Dr. Kopelman took this action in retaliation to Plaintiff Dr. Keenan disputing her false allegations over the eye examination, described in paragraphs 28 through 33, during the department's weekly morbidity and mortality session held just days prior.

### iii.    Failing Grade for November Trauma Rotation

42.    Defendant MIHS uses a pass/fail system to grade medical residents.

43.    In February 2, 2017, Defendant Dr. Ferguson informed Plaintiff Dr. Keenan that Defendant Dr. Kopelman failed him for his November Trauma rotation because of the false pulseless patient allegation described above in paragraphs 34 through 42.

44.     Prior to February 2, 2017, Defendants had not advised Plaintiff Dr. Keenan of his grade for the November Trauma rotation nor otherwise made him aware of any issue regarding the alleged pulseless patient.

45.     Plaintiff Dr. Keenan both in an email of February 3, 2017 and verbally adamantly denied this allegation to Dr. Ferguson.

46.     Notwithstanding Plaintiff Dr. Keenan's denial, Defendants' MIHS and Ferguson took no effort to investigate the situation and assess the validity of Defendant Dr. Kopelman's accusation and decision to fail Plaintiff Dr. Keenan for the November Trauma Rotation.

47.     Rather than investigate the November pulseless patient allegations, Defendant Dr. Ferguson responded to Plaintiff Dr. Keenan's February 3 email by sending an email to various attendings advising that Plaintiff Dr. Keenan had "protested his previous rotation failure" and asking for additional information as to his overall performance.

### iv.     Second Failure of Trauma Rotation

48.     In early February 2017, Plaintiff Dr. Keenan was in the process of completing a different rotation under the supervision of Defendant Dr. Kopelman.

49.     On February 8, 2107, Defendant Dr. Kopelman gave a failing grade to Plaintiff Dr. Keenan for the recently completed second rotation.

50.     Prior to February 8, Defendant Dr. Kopelman had not advised Plaintiff Dr. Keenan that he was at risk for failing the second rotation.

51.     Defendant Dr. Kopelman assigned a failing grade to Plaintiff Dr. Keenan for the second rotation in retaliation of his February 3 email, see paragraph 48, contesting the accuracy of her allegations about the pulseless patient.

52.     Defendant Dr. Ferguson refused to provide Plaintiff Dr. Keenan with reasons as to second failed rotation.

53.     As a result of the February 8 fail grade, Plaintiff Dr. Keenan was forced to give up scheduled rotations to remediate the failed rotations under Dr. Kopelman, which again placed him under the supervision of Dr. Kopelman.

### v.     Physical Altercation Accusation

54.     Defendant Dr. Ferguson accused Plaintiff Dr. Keenan of threatening to engage in a physical altercation with another resident in the ICU on March 31, 2017.

55.     During the occurrence of incident Plaintiff Dr. Keenan and the other resident had debated in a civil tone which of the two would perform a certain procedure on the patient without any threat of a physical alteration.

56.     The incident ended with no violation of protocol and certainly no physical altercation.

### vi.     The March 30, 2017 Meeting

57.     On March 30, 2017, Plaintiff Dr. Keenan met with Defendant Dr. Ferguson. During their meeting, Defendant Dr. Ferguson congratulated him on his "improvement" and stated he was on track to pass for the first year.

58.     During the meeting, Defendant Dr. Ferguson commended Plaintiff Dr. Keenan on his performance in the general surgery rotation that was ending that day.

59.     During the meeting, Plaintiff Dr. Keenan discussed with Defendant Dr. Ferguson his concerns over the repeated harassment and bullying from Dr. Kopelman.

60.     Plaintiff Dr. Keenan asked for advice regarding options for raising his concerns over Defendant Dr. Kopelman's treatment of him.

61.     Defendant Dr. Ferguson advised Plaintiff Dr. Keenan that his only recourse was to document his concerns in his upcoming required self-evaluation.

62.     Defendant Dr. Ferguson knew or should have known that Plaintiff Dr. Keenan could have raised his concerns through Defendant MIHS' human resource department which is charged with responsibility for investigating and resolving claims of supervisory harassment and retaliation.

63.    Defendant Dr. Ferguson advised Plaintiff Dr. Keenan that his sole avenue of recourse was the self-evaluation process in an effort to exercise complete control of his fate in the program and to preclude intervention by Defendant MIHS' human resource department.

### vii.    April 2, Self-Evaluation

64.    On April 2, 2017, Plaintiff Dr. Keenan, in reliance on Defendant Dr. Ferguson's directions during the March 30 meeting as described in paragraph 64, submitted his self-evaluation that included the following:

> Unsubstantiated allegations are treated as fact by some of the more vocal 3faculty and are used to threaten and punish the residents.  I think that when residents are placed on concerned status, held back for a year, failed in their rotations, or had outside rotations taken from them, this should be done so with solid evidence and goal oriented outcomes.  Unfortunately there are a few senior residents and attendings allow their own personal bias and prejudices to guide their actions, whether they are aware of it or not.  The use of strong words like dishonest, unprofessional, or untrustworthy are being used in the same tactic as when a nurse files a complaint against a doctor because he or she mad and doesn't like him and says it is about "patient care".  Unfortunately, it only takes a few people to cause a widespread negative opinion of a resident.  I understand that people have their own biases and that not everyone likes everyone, however there are some that do not have enough personal insight to realize that this practice is wrong, or may be simply unaware.
>
> I'd also like to see an end to the "trauma attendings" weekly tribunal.  Perhaps unbeknownst to the program, Dr. Kopelman and her friends  have coffee/breakfast on Friday's and "discuss" the residents under what they call a weekly "progressions" meeting.

65.    Plaintiff Dr. Keenan submitted his self-evaluation to Defendant Dr. Ferguson.

### viii.    Fail Grade for General Surgery Rotation

66.    Notwithstanding being told by Defendant Dr. Ferguson on March 30, 2017 - the last day of his general surgery rotation - that he had performed well in the rotation. Plaintiff Dr. Keenan was advised on April 17, that he had received a failing grade.

67.     The failing grade in the general surgery rotation was significant as it meant Plaintiff Dr. Keenan would receive only nine credits for the first year requiring him to start over as first year resident. With one year credit, Plaintiff Dr. Keenan could have applied for a medical license enabling him to practice as a general practitioner.

68.     Defendant Dr. Ferguson pressured the attending who had supervised the general surgery rotation to change Plaintiff Dr. Keenan grade from a pass - as Defendant Dr. Ferguson had predicted on March 30 - to a fail.

69.     When presented with his notice of probation on April 10, as discussed below in paragraph 82, Plaintiff Dr. Keenan advised Defendant Dr. Ferguson that he would file an appeal.

70.     In retaliation of Plaintiff Dr. Keenan exercising his right to appeal, Defendant Dr. Ferguson on or about April 12, caused a review of records reflecting Plaintiff Dr. Keenan's arrival time each day since February 1, 2017. Those records reflected that Plaintiff Dr. Keenan - as did most other residents - occasionally arrived shortly after the official starting time of 5:00 a.m.

71.     When advised of the fail grade for the general surgery rotation, Plaintiff Dr. Keenan spoke to the attending who supervised the general surgery rotation and was told that he had received a fail as he had not arrived precisely at 5:00 a.m. each day.

### C.     Pre-Termination Discipline

#### i.February 2, 2017 Placement on Concern Status

72.     On February 2, 2017, Defendant Dr. Ferguson unilaterally placed Plaintiff Dr. Keenan on "Concern Status."

73.      The medical resident contract incorporates and binds the parties to the terms of the MIHS Resident Manual.

74.     The MIHS Resident Manual provides Defendant MIHS may discipline or terminate a resident only for "reasonable cause."

75.     MIHS Policy 40701  defines "Concern Status" and established governing procedural requirements and safeguards by stating:

> [A] level of formal discipline less serious than probation. A resident may only be placed on Concern Status with the approval of the DIO or Designee. The program director must present documentation to the DIO or the designee. If the DIO or the designee believe that the documentation warrants the resident being placed on concern status, the DIO or Designee will report the action to the GMEC. If the DIO or Designee does not believe that the documentation warrants the resident being placed on concern status, the DIO or designee will counsel the PD regarding alternative actions.

76.     Defendant Dr. Ferguson knew or should have known of the governing procedural requirements and safeguards set forth in MIHS Policy 40701.

77.     Under MIHS Policy 40701, Defendant Dr. Ferguson as Program Director for Defendant MIHS' General Surgery Training Program, had authority to *request* that Defendant MIHS place Plaintiff Dr. Keenan on concern status.

78.     Defendant Dr. Ferguson lacked authority to unilaterally place Defendant Dr. Keenan on concern status.

79.     Given at the time she served as the Designated Institutional Officer for Defendant MIHS' residency program, Defendant Dr. Ferguson was obligated to secure from the Director of Academic Affairs appointment of an appropriate DIO Designee to review and approve or deny Defendant Dr. Ferguson's request.

80.     Under MIHS Policy 40701, Plaintiff Dr. Keenan lacked an ability to appeal being placed on concern status.

### ix.     April 10 Notice of Probation Status

81.     On April 10, 2017, Defendant MIHS placed Plaintiff Dr. Keenan on Probation Status.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

82.     Defendant Dr. Ferguson signed the April 10 probation letter placing Dr. Keenan on Probation Status in her dual capacity as the Program Director for Defendant MIHS' General Surgery Training Program and the Designated Institutional Officer for Defendant MIHS' residency program.

83.     Defendant Dr. Ferguson unilaterally placed Plaintiff Dr. Keenan of probation without asking, as MIHS policy requires, that the Director of Academic Affairs appoint a DIO designee to review and approve her request that Plaintiff Dr. Keenan be placed on probation. MIHS Policy 40701.

84.     No written record support's Defendant Dr. Ferguson's subsequent claim Defendant MIHS had appointed Dr. Eric Katz as the DIO Designee.

85.     In Dr. Ferguson's letter of April 10, 2017, Dr. Keenan was told that he was placed on Probation for four specific reasons, namely:

- Threat of physical altercation to colleague at bedside in SICU on 3/31.
- Worked Friday day, 4/7/17 despite the call schedule clearly stating night call.  When chief resident noted discrepancy, Dr. Keenan was sent home & unable to return to shift until 11PM.
- No call/no show today (4/10/17).
- Failure to return loaner pager and respond to multiple inquiries by switchboard.

86.     None of the reasons, individually or collectively, *even if assumed to be true,* suffice as "reasonable cause" for Defendant MIHS to place Plaintiff Dr. Keenan on probation.

87.     As explained in paragraphs 55 and 56, the physical alteration allegation is not true.

88.     Having agreed to work the April 7 night shift for another resident who needed to not work, Plaintiff Dr. Keenan worked two shifts on April 7.

89.     On April 10, Plaintiff Dr. Keenan overslept by an hour and reported to work an hour late.

90.    Plaintiff Dr. Keenan on April 7 used a loaner pager.  That is the same day he worked two shifts. He returned the loaner pager during the second work shift.

91.    The imposition of probation on a medical resident is a most serious imposition of discipline as it portends (a) expulsion from the program and (b) a lasting stigmatizing impact on the resident's professional good name and future ability to secure a medical license.

x.    **May 18 Hearing on Probation Allegations**

92.    Plaintiff Dr. Keenan timely contested the accuracy and sufficiency of the allegations in the April 10, notice of probation.

93.    Defendant MIHS on May 18, 2017 conducted a hearing on the probation notice.

94.    Such hearing was mandated under Plaintiff Dr. Keenan's medical resident employment contract.

95.    Such hearing was mandated by the due process clause of the United States Constitution.

96.    The May 18, 2017 hearing failed to satisfy the requirements of either Plaintiff Dr. Keenan's medical resident employment contract or the requirements of the United States Constitution.

97.    Composition of the Probation Appeals Committee did not comply with the applicable MIHS policy, or the Constitutional requirement that it provide Plaintiff Dr. Keenan with the opportunity to be heard by a fair and impartial decision-maker.

98.    Under MIHS Policy 40704 MT, the Appeals Committee should be: "A body comprised of the following 3 members: the Chair of the GMEC, the Medical Staff President, and the President of the Resident Council. In the case of conflict of interest (i.e. being from the same department) or unavailability, the Director of Academic Affairs will designate appropriate alternates. The Chair of the GMEC or alternate will Chair this committee."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

99.   MIHS appointed Dr. Eric Katz to serve on the Appeals Committee.

100.   The propriety of the appointment of Dr. Katz is in question because Defendant Dr. Ferguson now claims that Dr. Katz was her "DIO Designee" at the time Dr. Keenan was placed on Probation. See, paragraph 84.

101.   If Dr. Katz served as the "DIO Designee," Defendant MIHS violated the contractual and Constitutional mandates of due process by appointing him to serve on the Appeals Committee.

102.   Defendant MIHS failed to allow Plaintiff Dr. Keenan to be represented by legal counsel at the hearing.

103.   Defendant MIHS failed to give adequate notice before the hearing as to the scope of the allegations that would be considered at the hearing.

104.   Rather than limiting the hearing to the specific four allegations in the Notice of Probation, see paragraph 85  the Appeals Committee allowed Defendant Dr. Ferguson to submit and comment of a broad range of allegations contained in some fifty plus pages of documents that were produced only a few days before the May 18 hearing.

105.   In view of the production of voluminous material on numerous topics well beyond the scope of the four items listed in the notice of probation, Plaintiff Dr. Keenan made multiple requests via email and in person to reschedule the May 18 hearing to a later date. He was denied and told that the hearing would take place with or without him.

106.   Remarkably, Defendant Ferguson included allegations concerning the failed general surgery rotation, a post-April 10, event that she orchestrated in retaliation of Plaintiff Dr. Keenan advising her on April 10 that he would appeal from the notice of probation.  see paragraph 71.

107.   Plaintiff Dr. Keenan was precluded from having a full and fair opportunity to ask, his main accuser, Defendant Dr. Ferguson questions at the time of the Probation hearing. Dr. Ferguson spoke at length at the Probation hearing, but when it was time for Dr. Keenan to ask questions, she indicated that she needed to leave to attend to a patient

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

matter. While Defendant Dr. Ferguson's departure may have been necessary, it effectively precluded Plaintiff Dr. Keenan from having any meaningful opportunity to ask questions about her accusations. This was in direct violation of Policy 40704 MT which states: "The Resident will be permitted to ask questions of all witnesses including the PD."

108.    The Appeals Committee failed to adequately document the interviews as required by MIHS Policy 40704 MT, Procedures for Appeal, Paragraph E.4, ("The interviews must be documented.")

109.    These interviews started at about 9:15 AM, and concluded at 2:00 PM, with about 1:40 minutes off for a lunch break. The only documentation of these interviews is a single page authored presumably by Phyllis Thackrah, Director of Academic Affairs. These minutes do not document anything of substance concerning what any of the witnesses said. This minutes indicate that interviews were conducted on Dr. Ferguson, Dr. Richard Dixon, Dr. Tammy Kopelman, Dr. Ryan Eubanks, and Dr. Keenan. Yet there was virtually nothing documented of substance about what anyone said. Meanwhile, Dr. Keenan was specifically instructed to not record the interviews. In other words, he was precluded from recording the interviews on his own appeal.

110.    The appeals committee permitted witnesses to interrogate Dr. Keenan. This occurred during the time that he was supposed to have the opportunity to examine the witnesses as the defendant.  Rather than having an opportunity to gain information and establish a record, witnesses were allowed to ask questions, throw additional allegations, and redirect the focus of what was supposed to be his time to defend himself.

111.    On May 25, 2017, Dr. Keenan met with Dr. Chandrika Shankar, the Probation Appeals Committee Chair, and Phyllis Thackrah, Director of Academic Affairs at which time, Dr. Shankar and Ms. Thackrak presented to Plaintiff Dr. Keenan a written letter signed by the Appeals Committee that day advising that the Appeals Committee concluded the decision to place him on probation was not arbitrary or taken without reasonable cause.

112.   At that time, Dr. Keenan informed Dr. Shankar and Ms. Thackrak that he had recorded conversations of his attendings that unequivocally contradicted statements presented to the Appeals Committee during the hearing concerning his performance, that is, matters considered, but outside of the scope of the notice.

**D.   Termination of Plaintiff Dr. Keenan**

113.   Dr. Shankar and Ms. Thackrah reported the existence of the audio recordings made by Plaintiff Dr. Keenan to Defendant Dr. Ferguson, who used the recordings as a basis to terminate Defendant Dr. Keenan.

114.   Acting as the DIO Designee, Dr. Eric Katz signed a letter on May 30, 2017, notifying Dr. Keenan that Defendant MIHS was beginning the process to terminate his medical resident employment agreement.

115.   The May 30, 2017, letter alleged Plaintiff Dr. Keenan had violated MIHS Policy 69752-S, which states:

> Camera Phones and Video and Audio Recorders: MIHS prohibits the use of cameras or video or audio recorders in the workplace, including camera phones. Photos must not be taken unless it has been determined that photos are necessary for MIHS official business.

116.   MIHS Policy 69752-S did not prohibit the recording of conversations with Dr. Keenan's attendings. The purpose of the policy is stated as:

> Maricopa Integrated Health System (MIHS) prohibits the use of personal communication devices when such activity undermines privacy, affects quality of patient care, or interferes with the efficient operation of MIHS facilities.
> This policy defines the use of personal communication devices that employees may bring into the work site or issued by MIHS. Personal communication devices are not to be used in a manner that ensures the integrity of proprietary information, and also respects individual rights of privacy.

117.    The recording of performance evaluations with attendings does not undermine privacy, affect the quality of patient care, or interfere with the efficient operation of MIHS facilities.

118.    The May 30 letter, further tried to justify Plaintiff Dr. Keenan's termination by relying upon MIHS Policy 77127 which requires employees to maintain high standards of honesty and integrity.

119.    There is nothing dishonest about recording the conversations of attendings concerning a resident's performance.

120.    The recording of performance evaluations with attendings did not constitute "reasonable cause" for any discipline, let alone termination.

121.    Plaintiff Dr. Keenan appealed the notice of termination.

122.    Defendant MIHS failed to staff the Appeals Committee by its own procedures.

123.    Defendant MIHS failed to allow Plaintiff Dr. Keenan to be represented by legal counsel at the hearing

124.    The Appeals Committee denied the request of Plaintiff Dr. Keenan that he be provided with all factual information presented to the Appeals Committee concerning not only the specific reasons for the termination, but also prior matters .

125.    JURY DEMAND: Plaintiff demands a jury on all Counts.

COUNT ONE

126.    Plaintiff incorporates herein paragraphs 1 through 126 above.

127.    Defendant MIHS terminated without affording to him due process as required by the United States Constitution.

128.    Plaintiff is entitled to entry of an order requiring Defendant MIHS to remove the notice of probation from Plaintiff's file, advise any person or entity that received notice of the termination that it has been rescinded, return Plaintiff him to the *status quo ante*, and

compensate him for all financial loss and emotional stress resulting from its conduct together with his attorney's fees and court costs.

COUNT TWO

129.    Plaintiff incorporates herein paragraphs 1 through 126 above.

130.    Defendant MIHS place Plaintiff on probation without affording to him due process as required by the United States Constitution.

131.    Plaintiff is entitled to entry of an order requiring Defendant MIHS to remove the notice of probation from Plaintiff's file, advise any person or entity that received notice of the probation that it has been rescinded, return Plaintiff to the *status quo ante*, and compensate him for all financial loss and emotional stress resulting from its conduct together with his attorney's fees and court costs.

COUNT THREE

132.    Plaintiff incorporates herein paragraphs 1 through 126 above.

133.    Defendant MIHS breached the terms of Plaintiff's medical resident contract when it terminated him.

134.    Plaintiff is entitled to entry of an order requiring Defendant MIHS to remove the notice of probation from Plaintiff's file, advise any person or entity that received notice of the probation that it has been rescinded, return Plaintiff to the *status quo ante*, and compensate him for all financial loss and emotional stress resulting from its conduct together with his attorney's fees and court costs.

COUNT FOUR

135.    Plaintiff incorporates herein paragraphs 1 through 126 above.

136.    Defendant MIHS breached the terms of Plaintiff's medical resident contract when it placed him on probation. Plaintiff is entitled to entry of an order requiring Defendant MIHS to remove the notice of probation from Plaintiff's file, advise any person or entity that received notice of the probation that it has been rescinded, return Plaintiff to

the *status quo ante*, and compensate him for all financial loss and emotional stress resulting from its conduct together with his attorney's fees and court costs.

## COUNT FIVE

137.    Plaintiff incorporates herein paragraphs 1 through 126 above.

138.    Defendant Kopelman defamed Plaintiff by repeatedly making statements that she knew or should have known to be false concerning his performance as a medical resident.

139.    Defendant Kopelman knew or should have known that such false statements would subject Plaintiff to unwarranted discipline in the MIHS residency program and otherwise cause him to be held in disrepute, contempt and impeach his honesty, integrity, and professional reputation.

140.    Defendant Kopelman's false statements have caused and prospectively will cause monetary damage to Plaintiff in an amount to be calculated and proven at trial.

## COUNT SIX

141.     Plaintiff incorporates herein paragraphs 1 through 126 above.

142.    Defendant Ferguson defamed Plaintiff by repeatedly making statements that she knew or should have known to be false concerning his performance as a medical resident.

143.    Defendant Ferguson knew or should have known that such false statements would subject Plaintiff to unwarranted discipline in the MIHS residency program and otherwise cause him to be held in disrepute, contempt and impeach his honesty, integrity, and professional reputation.

144.    Defendant Ferguson's false statements have caused and prospectively will cause monetary damage to Plaintiff in an amount to be calculated and proven at trial.

WHEREFORE, Plaintiff requests entry of judgment in his favor on all counts and providing for relief as alleged above.

DATED this 24th day of May 2018.

WARD, KEENAN & BARRETT, P.C.

s/Gerald Barrett
Gerald Barrett
2141 E. Camelback Rd., Suite 100
Phoenix, AZ 85016
Tel: 602-279-1717
Fax: 602-279-8908
Email: gbarrett@wardkeenanbarrett.com
*Attorneys for Plaintiff*